# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Larry James Tyler, ) | Civil Action No. 9:13-3181-MGL-BM |
| Plaintiff, ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| Willie Eagleton and Brian Stirling, ) | |
| Defendants. ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 23, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 24, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. After being granted an extension of time to respond to the Defendants' motion, Plaintiff filed memoranda in opposition on June 5, 2014, July 21, 2014 and August 11, 2014.



1

Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] that he is an inmate at the Evans Correctional Institution, part of the SCDC system. Plaintiff makes a number of claims in his Complaint.

Plaintiff alleges that the Defendants Eagleton (Warden at ECI) and Stirling (Director of the SCDC) have denied his requests for more time in the law library so that he can "do research to submit my PCR to the court". Plaintiff also complains that the law library is "antiquated" and that (apparently officials at the law library) will not make copies of his "legal papers". Plaintiff also makes other complaints, such as that the Defendant Eagleton refuses to give him a prison job, and that Eagleton and Stirling have refused to let him get "one hour of fresh air a day". Plaintiff alleges that he has been at ECI "over seven months and has been outside recreation 5 times and less than a hour". Plaintiff further complains about how the grievance system at the prison is operated, in particular that the "time frames" are "too short" and that it takes too long to process grievances through the prison mail room.

Plaintiff also complains that it took too long to get his "migraine pills" after they were stopped in August (presumably of 2013); specifically, that it took 30 days to get his migraine pills.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



Plaintiff complains that he had to "go through 30 days of pain and suffering" before he got his medication. Plaintiff further complains that medical is charging him for his medication, which he should not have to pay for because this requirement does not apply to medical costs incurred as a result of injuries sustained by an inmate or due to other medically necessary treatment.

        Plaintiff has attached to his Complaint copies of several Request to Staff Member forms and grievance forms. He seeks various injunctive and/or declaratory relief, and (considered liberally) appears to be requesting monetary damages. See generally, Plaintiff's Verified Complaint, with attached Exhibits.

        In support of summary judgment in the case, the Defendants have submitted copies of some discovery requests, as well as various medical documents. See Exhibits. The Defendant Eagleton has also submitted an affidavit wherein he attests that he was the Warden at ECI during the relevant time period. Eagleton attests that Plaintiff has been allowed access to the law library in accordance with South Carolina Department of Corrections policy, and that while Plaintiff has utilized the law library on multiple occasions, he is not entitled to unlimited access to the law library, which he [Eagleton] has personally explained to the Plaintiff "to no avail." Eagleton attests that Plaintiff is also not being deprived of "fresh air daily", and that in fact Plaintiff is allowed to walk outside multiple times per day when he walks to and from his housing unit, the dining hall, and his work assignments. Eagleton further attests that Plaintiff is not confined to maximum segregation, but is in the general population, and that as such he is also provided outdoor recreation on a regular basis. With respect to Plaintiff's complaint about a prison job, Eagleton attests that although there is no constitutional right to a prison job, Plaintiff is now working at a prison job. Eagleton attests that the reason Plaintiff did not previously have a prison job was because the number of prison jobs



available are far less than the actual number of prison inmates.

With respect to Plaintiff's medical problems, Eagleton attests that he is not personally responsible for Plaintiff's medical care, as that responsibility is assigned to medical personnel. Eagleton attests, however, that a review of Plaintiff's medical records reveal that he has been seen and treated on multiple occasions for his medical complaints (a complete copy of Plaintiff's medical record is attached to Eagleton's affidavit as Exhibit A). Eagleton attests that Plaintiff's medical records undeniably reflect that he has been prescribed numerous medications for his headaches and provided with appropriate medical care, and that at no time was he [Eagleton] deliberately indifferent to any serious medical need of the Plaintiff. See generally, Eagleton Affidavit, with attached Exhibits.

The Defendant Bryan Stirling has also provided an affidavit, wherein he attests that he was the Director of the SCDC during the relevant time period. Sterling attests that while he has no personal knowledge of the matters alleged in Plaintiff's Complaint, Plaintiff is not entitled to unlimited use of the law library, or to a prison job, or to unlimited outdoor recreation, or to a grievance system of his own choosing, or to medical and/or prescriptions completely free of charge. Stirling attests than neither he or the other Defendant knowingly violated any of Plaintiff's civil and/or constitutional rights, nor have they been deliberately indifferent to any of Plaintiff's constitutionally required needs. See generally, Stirling Affidavit.

As attachments to his initial opposition to summary judgment, Plaintiff has again submitted copies of several inmate grievances and Requests to Staff Member forms he has filed. In Request to Staff Member forms dated January 20, 2014 and March 13, 2014 (both *after* this lawsuit was filed), Plaintiff is requesting access to the law library. In response, Plaintiff is instructed to bring



all of his legal documents to the education building. In a Request to Staff Member form dated September 30, 2103, Plaintiff complains about not having a prison job. The response to that Request to Staff Member form states "Job service in the community doesn't have enough jobs . . . " and advises Plaintiff that no state laws were being violated. In a Request to Staff Member form dated September 6, 2013, Plaintiff complains that his Naproxen was "not working" for his migraines and that he needs to see the doctor to get another prescription. The response on this Requests to Staff forms reads: "I will get you in to see the provider as soon as I can".

In his second response to the Defendants' motion Plaintiff filed two affidavits. In his first affidavit, responding to Eagleton's statement in his affidavit that Plaintiff is provided outdoor recreation and is also able to walk outside multiple times per day, Plaintiff states that he had a work assignment for about three months (contradicting his claim about not being given a prison job) which was an indoor door janitor job, and that he went outdoors for recreation three times in those three months. Plaintiff also attests that he goes to the dining hall three times a day, during which time he is outside for about five minutes at a time. In his second affidavit, Plaintiff discusses an investigation and potential parole re-evaluation which is not an issue in this lawsuit. See generally, Plaintiff's Affidavits.

In his final response filed on August 11, 2014, Plaintiff attached 32 pages of documents, many of which post-date the filing of this lawsuit as well as relate to matters not at issue in this lawsuit. Additionally, some of these documents are correspondence between the Plaintiff and the Clerk of this Court concerning his filings. In a Request to Staff Member form dated July 1, 2014, Plaintiff complains that prison officials are refusing to make copies of his handwritten legal documents. Plaintiff is advised in the response section of this request that he needs to view Policy



GA 1.03 (13.2) (apparently referring to prisoners handwriting copies of their materials). Plaintiff has also attached copies of some SCDC health services medical summaries from the summer of 2013, beginning in June and ending in August. These documents reflect that Plaintiff was seen in sick call on June 17, 2013 complaining of migraines and that his "meds" were not working. Plaintiff was advised to continue all meds as ordered by the provider, and that the head nurse would schedule an appointment with the provider for an evaluation of possible medication adjustments. Plaintiff then had a followup appointment on June 28, 2013. On August 21, 2013 Plaintiff presented to sick call requesting some more Naproxen for his headaches. The notation for this entry indicates that Plaintiff had put in for a refill of Naproxen two times but had not received any that month, although he denied having any headaches at that time. Plaintiff was assessed with tension headaches. The notation for this entry further indicates that the nurse would check to see if Plaintiff's Naproxen had been received from the pharmacy, but that he had also been given the option of taking Tylenol. The "sign off" notation indicates that Plaintiff's Naproxen prescription was now for ten days or less, and that he would need a provider appointment before it would be renewed. A medical encounter notation for August 23, 2013 states that the pharmacy had indicated that Plaintiff's Neproxen prescription would be honored until "5-14", and that a refill had been sent. The encounter note for August 29, 2013 states that Plaintiff "needs to take the two [prescriptions] as directed". A separate medical summary chart indicates Plaintiff had also been prescribed Imitrex for his complaints of migraine headaches back in May 2013.

In addition to these medical summaries, Plaintiff has also provided two more affidavits. In his first affidavit (Court Docket No. 59-1, pp. 20-21), Plaintiff complains about some documents he sent to the Federal Court in 2014, that on one occasion in May 2014 it took him eight



days to get some legal documents out of maximum segregation, and that on another occasion in April 2014 he was not allowed to have some legal documents notarized. Again, all of these complaints relate to incidents that allegedly occurred *after* the filing of this lawsuit. Plaintiff's second affidavit (Court Docket No. 59-1, pp. 25-26) appears to be a duplicate of the other affidavit.

## **Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the arguments and evidence submitted, the undersigned concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

With respect to Plaintiff's medical claim, in order to proceed with his claim for denial of adequate medical care and avoid summary judgment, Plaintiff must present evidence sufficient to



create a genuine issue of fact as to whether either named Defendant was deliberately indifferent to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).  The evidence and arguments submitted do not give rise to a genuine issue of fact as to whether either of these two Defendants was deliberately indifferent to Plaintiff's serious medical needs.

First, the undersigned is constrained to note that Plaintiff has presented no evidence, and indeed has made no claim, that either of these two Defendants was actually involved in his medical care, or made any decisions about what type of care and treatment Plaintiff was to receive.  Rather, both of the named Defendants are simply supervisory prison officials (one being the director of the SCDC, the other being the Warden of the prison where Plaintiff was incarcerated).  There is no supervisory or respondeat superior liability under § 1983.  Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977).  Additionally, as correctly noted by the Defendants in their affidavits, even if they *were* aware of Plaintiff's medical complaints, since they were not involved in the decisions made with respect to what type of care Plaintiff received, they would have no liability for those decisions under the facts presented.  Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837.  Further, Plaintiff's medical records



confirm that he was seen and evaluated for his complaints by medical personnel on numerous occasions. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].

Finally, to the extent that Defendant Stirling, as Director of the SCDC (or, conceivably, Eagleton as Warden at ECI), could be deemed responsible for a prison policy requiring prisoners to pay for medication in some circumstances, there is nothing per se unconstitutional about such a policy. Cf. Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999)[prison policy of requiring inmates to pay for their own medication, if they could afford to do so, does not amount to a constitutional violation]; Mincy v. Deparlos, 497 Fed.Appx. 234 at ** 4 (3d Cir. 2012); McCall v. Johnson County Sheriff Dep't, 71 Fed.Appx. 30 at **1 (10th Cir. 2003). Nor has Plaintiff provided any evidence to show how any such policy is being applied to him in an unconstitutional manner. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)[A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]. This claim is therefore without merit.

With respect to Plaintiff's access to court claim, he has again failed to provide any evidence to show that any prison policy for which the Defendants Stirling or Eagleton may be responsible is violating his constitutional rights. The evidence (as well as Plaintiff's allegations) appear to indicate that Plaintiff's complaint is that he wishes to have more access to the prison library than he is being provided. However, Defendants' affidavits indicate that Plaintiff is being provided access to the law library as required by prison policy, and Plaintiff has failed to present any evidence



9

to show that the access he receives pursuant to this policy denies him sufficient access to the prison library. Indeed, Plaintiff's multiple filings in this case show that he is being provided with access to this Court. Plaintiff is not entitled to unlimited access to the prison law library. See Bonga v. Caruso, No. 07-190, 2007 WL 1686336 at * 6 (W.D.Mich. June 8, 2007)["An indigent prisoner's constitutional right to legal resources and materials is not . . . without limit."]; Therrien v. Martin, No. 07-1285, 2007 WL 3102181 at * 6 (D.Conn. Oct. 19, 2007)[Prisoner is not entitled to unlimited resources to litigate his case].

Plaintiff is also not entitled to unlimited access to pens or papers, nor is he entitled to have his hand written materials copied for him by prison officials. Cf. Hartsfield v. Mayer, 76 F.3d 378 at * 3 (6th Cir. 1996)[Finding that, although prison officials must provide all inmates with paper and pen to draft legal documents, notarial services to authenticate the papers and stamps to mail them, "the state is not required to provide the prisoner with unlimited access to the courts," and discussing reasonable limitations.]; Johnson v Moore, 948 F.2d 517, 521 (9th Cir. 1991)[There is no constitutional right to free photocopies]; Dugar v. Coughlin, 613 F.Supp. 849, 853 (S.D.N.Y. 1985)[Indigent litigants are not entitled to free photocopies or unlimited free postage (prison case)]; Carroll v. North Carolina Department of Corrections, No. 91-7562, 1991 WL 158146 (4th Cir. 1991)[Pro se prisoners may hand wright legal papers to submit for submission to the Court]. Rather, Plaintiff may only maintain a viable claim for denial of access to the courts where the absence of some type of aid prejudices his ability to make a meaningful presentation of his claims. Bounds v. Smith, 430 U.S. 817 (1977). Plaintiff has made no such showing in this case, as he has failed to identify any actual injury or specific harm he has incurred as a result of any prison policy of which he complains. See Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a

10



showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993). Therefore, this claim is without merit. See also Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

The remainder of Plaintiff's claims are essentially a hodgepodge of conclusory claims and allegations, none of which are sufficiently supported by facts and evidence sufficient to give rise to a genuine issue of fact that a constitutional violation has occurred. During the time period at issue, Plaintiff was a prisoner being held in a state prison facility, not a hotel. It is to be expected that conditions of confinement under such circumstances are often times less than ideal. Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988). Therefore, the only issue for this Court to decide is whether the evidence presents a sufficient question of fact as to whether the conditions under which Plaintiff was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment. There is no such evidence.

First, the Defendants are correct that Plaintiff had no constitutional right to a prison job. Williams v. Farrior, 334 F. Supp. 2d 898, 903-904 (E.D. Va. 2004); see Cosco v. Uphoff, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) [Noting that an inmate has no property interest in his or her prison job]; Miller v. Benson, 51 F.3d 166, 170 (8th Cir. 1995) (same); James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982) ["Any expectation that [Plaintiff] may have had of keeping his prison job does not amount to a property or liberty interest."];

11



James v. Jackson, No. 08-144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009) ["[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"]. In any event, the evidence before the Court indicates that Plaintiff now has a prison job, while Plaintiff's own evidence indicates that he has had prison jobs while incarcerated at ECI.

Similarly, Plaintiff has himself indicated that he has been afforded periods of outside recreation and exercise, and even assuming that Plaintiff's outside exercise periods have been as limited as he claims, he himself indicates that he nevertheless gets to go outside two or three times a day. Further, he has provided no evidence to show that he cannot engage in indoor exercise, if he so wishes. C.f. Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at — 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]. Hence, Plaintiff has failed to establish a constitutional violation with respect to these allegations. See generally Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Farmer, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"].

Finally, Plaintiff's complaints about the prison grievance system and how it is structured and/or handled, even if Plaintiff is correct, fails to establish a compensable claim under § 1983. Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide



12

a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]. Therefore, this claim is also without merit.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.[3]

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 27, 2014
Charleston, South Carolina

---

[3] Plaintiff also has pending a motion for a preliminary injunction and a motion to stay. In light of the recommendations set forth hereinabove, both of those motions should be denied.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

